Bahram AGHILI and Mitra
Rafii, Appellants,

v.

John R. BANKS, Jr., Tanglewilde South
Section Owners Association, Inc., Association Management Corporation,
and Elbar Investments, Inc., Appellees.

No. 14–98–01148–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 21, 2001.

Rehearing Overruled Jan. 3, 2002.

Raymond M. Hill, William S. Hart, Houston, for appellants.

John Robert Banks, Richard A. Battaglia, John Bradley Mitchell, Marc D. Markel, Houston, for appellees.

Panel consists of Justices SEARS, DRAUGHN, and ANDELL.*

## OPINION ON REHEARING

ROSS A. SEARS, Justice (Assigned).

Appellants, Bahram Aghili and Mitra Rafii, file a motion for rehearing, noting that we inadvertently failed to address in our original opinion their appeal of the denial of their cross-motion for summary judgment. Accordingly, we withdraw our previous opinion of August 23, 2001, and substitute this opinion in its place.

This is an appeal from a lawsuit filed by appellants to set aside the non-judicial foreclosure of their homes by their condominium owners' association. On cross-motions for summary judgment, the trial court granted summary judgment against appellants and denied their own motion for partial summary judgment. In five issues, appellants contend that the trial court erred (1) in affirming non-judicial foreclosure without prior recordation of the owners' association's liens; (2) in refusing to rule that a prerequisite to a non-judicial foreclosure was a filing of a notice of lien; (3) in affirming foreclosure sales not shown to have been conducted by a duly authorized attorney-in-fact or trustee approved by resolution of the owners' association's board of directors; (4) in admitting portions of the summary judgment evidence; and (5) in dismissing their claims against John Banks, Jr. and the management company.

We affirm the denial of appellants' motion for partial summary judgment because the owners' association was not required to record a notice of lien before it conducted a non-judicial foreclosure of appellants' condominiums. However, because we hold that the trial court erred in admitting an affidavit in support of appellees' motion for summary judgment, and because there is a fact issue without the affidavit, we reverse and remand the summary judgment granted to appellees for further proceedings. Finally, because appellees' motion for summary judgment did not address the individual claims against John Banks, Jr. and Association Management Corporation, it was error to award summary judgment on them, and these claims are also remanded.

* Senior Justices Ross A. Sears and Joe L. Draughn sitting by assignment.

## BACKGROUND[1]

Bahram Aghili and his sister, Mitra Rafii, owned three condominiums in Tanglewilde South, Section II. Part of the obligations of ownership was payment of monthly maintenance fees to the Tanglewilde South, Section II, Owners' Association (the owners' association). Aghili was responsible for these payments for his condominium and as agent for his sister's two units. However, in 1997, he was suffering because of a kidney transplant and related treatment and fell behind on his payments beginning in August. In November, the purported trustee for the owners' association, John R. Banks, Jr., sent Aghili a letter for each condominium to collect the debt. In December, Banks allegedly mailed notices of sale to Aghili by certified mail. However, the letters were returned. Nonetheless, John Banks proceeded with the sale of the homes on January 6, 1998. He sold the homes to Elbar Investments, Inc. ("the buyer"), with whose principal he was on a first-name basis and to whom he sold five such properties in January alone. Although the market value of the condominiums appeared to be $29,000, $29,000, and $39,000, the buyer paid only $2,000, $2,000, and $4,000 respectively. The unpaid owners' maintenance fees on the properties totaled $5,604.96.

Aghili learned about the sale via his tenants, who had been instructed by the buyer to stop paying rent to him. On January 9, 1998, just three days after the sale, Aghili's attorney contacted Banks, but Banks denied any irregularities in the sale. After Aghili filed suit on January 15 against the owners' association, Banks, the buyer, and Association Management Corporation ("the management company"), Banks filed an answer that stated he was the attorney for all defendants. He also filed a motion to dismiss, again listing himself as attorney for all defendants. He shortly thereafter filed a motion for summary judgment, which he clearly drafted for all defendants and signed on behalf of the owner's association, the management company, and himself and with permission of the buyer. Three days before the summary judgment hearing, the buyer made its first independent appearance in the case with its own attorney when it filed its original answer. Banks filed a second affidavit, averring he had inadvertently listed the buyer as one of his clients in the previous pleadings.

The motion for summary judgment essentially stated that the foreclosure sale had occurred in accordance with the law. The central proof for the motion was provided by Banks in the form of his own affidavit. In it, he identified various documents, claimed to be the duly-appointed trustee for the owner's association, asserted that he had sent formal written demands and timely notice of sale to Aghili, and explained the details of the sale. Appellants lodged numerous objections to the affidavit, including that it should be struck from evidence because Banks was disqualified from appearing as both witness and advocate for the parties in the proceeding.

Additionally, appellants filed a motion for partial summary judgment, seeking a ruling that the condominium declaration required the owners' association to file a notice of lien before it conducted a nonjudicial foreclosure.

## RECORDATION OF LIEN

■ In their first and second points of error, appellants claim that the trial court erred in denying summary judgment to them and in granting summary judgment

1. This background should not be construed as an appellate ruling on what facts were established or controverted by summary judgment evidence.

against them because the condominium declaration required the owners' association to file a notice of lien before proceeding with non-judicial foreclosure. Because we hold that the condominium declaration did not require further recordation of a notice of lien, we overrule points or error one and two.

A condominium owner's obligation to pay levied assessments is secured by a continuing lien on the condominium unit. TEX. PROP.CODE ANN. § 82.113(a) (Vernon 1995) (Uniform Condominium Act). The owners' association creates this lien by recordation of the condominium declaration. *Id.* § 82.113(c). Such recordation constitutes both record notice and perfection of the lien. *Id.* No further recordation is necessary unless so specified by the condominium declaration. *Id.* In this case, appellants contend the condominium declaration specifically requires further recordation of a notice of lien before non-judicial foreclosure.

■■■ Thus, the issue we must address is the interpretation of the condominium declaration for Tanglewilde South, Section II. Restrictions in such an instrument are treated as contracts between the parties. *See Herbert v. Polly Ranch Homeowners Ass'n,* 943 S.W.2d 906, 907–08 (Tex.App.—Houston [1st Dist.] 1996, no writ). They are subject to the same general rules of contract interpretation. *Pilarcik v. Emmons,* 966 S.W.2d 474, 478 (Tex.1998). "In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument." *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983). To achieve this objective, courts consider the entire writing in an effort to give effect to all the provisions of the contract so that none will be rendered meaningless. *Id.*

■■■ If a declaration's restrictive covenants can be given a definite or certain legal meaning, the covenants are unambiguous. *Pilarcik,* 966 S.W.2d at 478. If there is no ambiguity in the restrictive covenants, the court must decide their intent from the language used in the document, *Silver Spur Addition Homeowners v. Clarksville Seniors Apt.,* 848 S.W.2d 772, 774 (Tex.App.—Texarkana 1993, writ denied). Whether restrictive covenants are ambiguous is a matter of law for the courts to decide. *Roman Catholic Diocese of Galveston–Houston v. First Colony Cmty. Serv. Assoc., Inc.,* 881 S.W.2d 161, 163 (Tex.App.—Houston [1st Dist.] 1994, writ denied).

■■■ All parties agree the following language in article 24 of the condominium declaration is unambiguous:

> To evidence such a lien the Board of Managers or Managing Agent may, but shall not be required to, prepare a written notice setting forth the amount of such indebtedness, the name of the owner of the condominium unit and a description of the condominium unit. Such a notice shall be signed by one of the Board of Managers or by the Managing Agent and may be recorded in the Office of the Clerk Recorder of Harris County, Texas. Such lien ... shall attach from the date of failure of payment of the assessment. *Such lien may be enforced by foreclosure of the defaulting owner's condominium unit by the Association in like manner as a mortgage on real property upon the recording of notice of claim thereof.* In any such foreclosure, the owner shall be required to pay the costs and expenses of such proceedings, the cost and expenses for filing the notice or claim of lien and all reasonable attorney's fees.
>
> . . . .
>
> Each owner, upon acceptance of a deed to a condominium unit, hereby ex-

pressly vests in the Association or its agents the right and power to bring all actions against such owner personally for the collection of such charges as a debt, and to enforce the foresaid lien by all methods available for the enforcement of such liens, including non-judicial foreclosures pursuant to Article 3810 of the Texas Revised Civil Statutes, and such owner hereby expressly grants to the Association a power of sale in connection with said lien.

Appellants focus on the one italicized phrase in support of their argument and urge that further recordation was required. However, restrictive covenants must be liberally construed to give effect to their purpose and intent. *Samms v. Autumn Run Cmty. Improvement Ass'n, Inc.*, 23 S.W.3d 398, 402 (Tex.App.—Houston [1st Dist.] 2000, pet. denied). Appellants' interpretation is contrary to this principle for two reasons. First, it ignores the precatory use of the word "may" in the sentence. Second, such a reading would render meaningless the language in the second paragraph allowing enforcement of the lien by all available methods. We thus overrule points of error one and two.

## DISQUALIFICATION

We next address point of error four, which raises adverse rulings on appellants' objections to Appellees' summary judgment evidence. One of the objections that appellants raised repeatedly was the appearance of John Banks, the attorney who conducted the foreclosure sale, as a pro se defendant, as attorney for the owner's association, as attorney for the management company, as apparent attorney for the buyer, and as the primary witness for appellees' joint motion for summary judgment. Appellants contend that the policies of our courts and bar do not permit attorneys to be witnesses by affidavit in cases in which they are also counsel.

Rule 3.08 of the Texas Disciplinary Rules of Professional Conduct prohibits an attorney from appearing both as a witness and as counsel:

(a) A lawyer shall not accept or continue employment as an advocate before a tribunal in a contemplated or pending adjudicatory proceeding if the lawyer knows or believes that the lawyer is or may be a witness necessary to establish an essential fact on behalf of the lawyer's client, unless:

(1) the testimony relates to an uncontested issue;

(2) the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony;

(3) the testimony relates to the nature and value of legal services rendered in the case;

(4) the lawyer is a party to the action and is appearing pro se;

(5) the lawyer has promptly notified opposing counsel that the lawyer expects to testify in the matter and disqualification of the lawyer would work substantial hardship on the client.

"The rule reflects the concern that an opposing party may be handicapped in challenging the credibility of a testifying attorney." *Anderson Producing Inc. v. Koch Oil Co.*, 929 S.W.2d 416, 422 (Tex.1996). Further, the comments to the rule state that if "the lawyer's testimony concerns a controversial or contested matter, combining the roles of advocate and witness can unfairly prejudice the opposing party." TEX. DISCIPLINARY R. PROF. CONDUCT 3.08 cmt. 4 (1994).

When an attorney who represents a party is an affiant in support of a motion for summary judgment, he or she is a witness. *See Mauze v. Curry*, 861

S.W.2d 869, 870 (Tex.1993) (per curiam). Although Banks also represented himself, his testimony does not fall within any of the five exceptions enumerated in Rule 3.08(a) for the remaining defendants in the case for whom he appeared as counsel. Consequently, the trial judge abused his discretion when he allowed Banks to appear as both witness and counsel in this case.

■ Whether the trial court should have excluded Banks's affidavit because of his improper dual role is an issue of first impression for this court. However, the issue has been indirectly raised in the jurisprudence of this state. In *Anderson Producing,* a litigant asked that an attorney for the opposing party be disqualified or, alternatively, prohibited from testifying. *See Anderson Producing,* 929 S.W.2d at 419 & 420 (reversing because attorney-witness had not appeared as advocate at trial, but noting that appellate court was unclear whether it intended to prohibit attorney from testifying on remand). The dissenters in *Anderson Producing* voiced their support for prohibiting a lawyer who appears as an advocate from testifying in the matter. *Id.* at 425 (Phillips, C.J., & Spector, J., dissenting) & at 427 (Owen, J. & Hecht, J., dissenting).

One of the dissenting opinions reasons that "[a]llowing an attorney to ascend the witness chair to expound the controlling testimony for the client's case blurs the necessary distinction between advocate and witness on which our adversary system depends." *Id.* at 426. Further, the second dissenting opinion advances that "[w]e should not allow attorneys ... to sign on as counsel, prepare the entire case for trial, and then present the case ... through their own testimony." *Id.* at 429. We believe this rationale is also applicable to summary judgment proceedings. In this case, especially, it is appropriate:

John Banks began the lien foreclosure; set the sale date; sold appellants' homes to a buyer to whom he has sold other properties and with whom he is on a first-name basis; denied any defect in the sale to appellants' counsel just three days after the sale; then appeared as counsel for the homeowners' association, management company, and himself; filed a motion to dismiss as the attorney for all defendants (including the buyer), just twenty-one days after the sale; wrote and filed the summary judgment for all defendants; and appeared as the central witness through his affidavit.

■ One of the dissents also discusses the broader concern for loss of public confidence in the administration of the justice system when an attorney also testifies for his clients. *Id.* at 430. We agree that the appearance of a testifying advocate tends to cast doubt on the ethics and propriety of our judicial system. "[T]he preservation of public trust both in the scrupulous administration of justice and in the integrity of the bar is paramount ..." *Warrilow v. Norrell,* 791 S.W.2d 515, 523 (Tex.App.—Corpus Christi 1989, writ denied). Moreover, "[t]he practice of attorneys furnishing from their own lips and on their own oaths the controlling testimony for their client is one not to be condoned by judicial silence .... nothing short of actual corruption can more surely discredit the profession." *Id.*

Additionally, other participants in a case are not permitted to blur their roles by appearing as witnesses. Prohibiting an attorney from testifying is akin to the rule that judges are incompetent to testify as witnesses in trials over which they preside. TEX.R. EVID. 605; *see Bradley v. State ex rel. White,* 990 S.W.2d 245, 248 (Tex.1999) (citing cases that such testimony is an intolerable appearance of partiality, blurs the role of judge, and amounts to a "spec-

tacle"). Similarly, a juror cannot testify as a witness in a case in which the juror is sitting. TEX.R. EVID. 606(a). Thus, a lawyer who represents clients as an advocate before a court should be incompetent to provide evidence in the matter unless one of the exceptions to Rule 3.08 applies.

Accordingly, we hold that the trial court had the authority to strike Banks's affidavit as incompetent. Given Banks's extensive role in selling appellants' homes and in appearing as an advocate for the owners' association, management company, and at times (arguably) for the buyer, he should not have been permitted to testify by affidavit in the summary judgment proceeding. The trial court abused its discretion in overruling appellants' objection to the affidavit.

### FACT ISSUES REMAINING

In their third point of error, appellants contend that fact issues remain whether Banks was a trustee properly approved by resolution by the Board of Directors of the owners' association. The bases for appellees' motion for summary judgment were that all conditions precedent to the sale had been satisfied and that there were no irregularities in the sale. To meet their summary judgment burden, appellees had to present evidence establishing that no genuine issue of material fact exists and that they are entitled to judgment as a matter of law. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex.1995); *Cate v. Dover Corp.*, 790 S.W.2d 559, 562 (Tex.1990). Because Banks's affidavit was the central evidence in the summary judgment, without it, fact issues exist about Banks's authority to act as trustee, notice about the sale, and whether he conducted the sale according to the strict dictates of the law. Appellees did not meet their summary judgment bur-

den, and we accordingly reverse and remand.

### INDIVIDUAL CLAIMS

In their fifth point, appellants contend the trial court erroneously granted summary judgment on their claims against Banks and the management company individually. Appellees' motion for summary judgment did not specifically raise grounds on the individual claims against Banks and the management company. The motion itself must expressly present the grounds on which it is made. *McConnell v. Southside I.S.D.*, 858 S.W.2d 337, 341 (Tex.1993). The purpose of this requirement is to provide the opposing party with adequate information for opposing summary judgment. *Westchester Fire Ins. Co. v. Alvarez*, 576 S.W.2d 771, 772 (Tex.1978). A party may not be granted summary judgment as a matter of law on a cause of action not addressed in a summary judgment proceeding. *Chessher v. Southwestern Bell Tel. Co.*, 658 S.W.2d 563, 564 (Tex.1983). In their brief, appellees cite an unpublished case for authority that a proper foreclosure precludes all causes of action against them. However, unpublished cases may not be cited as authority. TEX.R.APP. P. 47.7. We cannot affirm a summary judgment on a ground not specifically presented in the motion. *Travis v. City of Mesquite*, 830 S.W.2d 94, 100 (Tex.1992). Therefore, we sustain point of error five and reverse and remand the individual claims against Banks and the management company.

### APPELLATE MOTION

Finally, appellants filed a motion to disregard comments made by John Banks during oral argument before this court based on the conflict between appearing as an advocate and as a witness. Given our

**820**

disposition of this appeal, we overrule the motion as moot.

## CONCLUSION

In conclusion, we have overruled points of error one and two. We have sustained point of error four for appellants' objection to Banks's affidavit because he appeared both as a witness and as counsel. Because of our holding on point four, we have sustained point of error three to the extent that fact issues remain about Banks's authority to act as trustee, notice about the foreclosure sales, and conduct of the sale according to the strict dictates of the law. We have sustained point of error five because appellees' motion for summary judgment did not set forth grounds on the individual claims against Banks and the management company. We affirm the denial of appellants' motion for partial summary judgment and we reverse and remand appellees' motion for summary judgment to the trial court for further proceedings.

Justice ANDELL not participating.